# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| RULA A.-S. and M.Q.,<br><br>      Plaintiffs,<br><br>v.<br><br>AURORA HEALTH CARE and<br>AURORA HEALTH CARE, INC.<br>HEALTH AND WELFARE PLAN,<br><br>      Defendants. | Case No. 20-CV-1816-JPS<br><br>**ORDER** |

On February 8, 2021, Defendants Aurora Health Care ("Aurora") and Aurora Health Care, Inc. Health and Welfare Plan (the "Plan") (collectively, "Defendants") filed a partial motion to dismiss Count II of the complaint against them. (Docket #35). This motion is fully briefed, and, for the reasons explained below, the Court will deny, in part, and grant, in part, Defendants' partial motion to dismiss.

1. **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b) provides for the dismissal of complaints which, among other things, "fail[] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*,

810 F.3d 476, 480 (7th Cir. 2016) (internal citation omitted). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81. However, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (citing *Twombly*, 550 U.S. at 555–56).

## 2. RELEVANT ALLEGATIONS

Aurora is an insurance company headquartered in Milwaukee, Wisconsin and was the third-party claims administrator for the Plan during the treatment at issue in this case. (Docket #2 at 1). The Plan is a self-funded employee welfare benefits plan under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 *et seq.* ("ERISA"). (*Id.* at 2). Rula A-S ("Rula") was a participant in the Plan, and her daughter, M.Q., was a beneficiary (collectively, "Plaintiffs"). (*Id.*)

On January 27, 2017, M.Q. was admitted to Alpine Academy ("Alpine") in Utah. (*Id.* at 3). Plaintiffs allege that Alpine is a licensed residential-treatment facility which provides "sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems." (*Id.* at 2). While at Alpine, M.Q. received care and treatment. (*Id.*)

In a letter dated January 27, 2017, Aurora denied payment for M.Q.'s treatment at Alpine. (*Id.* at 3). The claim reviewer wrote, in part, that

> [t]he facility in question is known as Alpine Academy. The description of the program indicates that it is a residential program, but it is also identified as a school and its residents are referred to as "students". Therefore, this placement appears to be a school setting with a therapeutic component. As such, it would fall under the plan exclusion related to school programs . . . . Therefore, the proposed placement would be excluded from plan coverage . . . .

(*Id.*)

On May 22, 2017, Rula appealed Aurora's denial of her claim. (*Id.*) She disputed Aurora's classifying Alpine as a school and noted that it had been licensed by the State of Utah as a residential-treatment facility. (*Id.*) In a letter dated June 20, 2017, Aurora upheld the denial of payment for M.Q.'s treatment at Alpine. (*Id.* at 5).

Plaintiffs initiated the present suit in December 2019 in the District of Utah. (*Id.* at 1). Approximately one year later, the case was transferred to the Eastern District of Wisconsin to this branch of the Court. (Docket #30). Plaintiffs seek recovery of medical expenses incurred for M.Q.'s treatment in an amount totaling over $159,000.00, along with various equitable remedies. (Docket #2 at 5). In Count I of their complaint, Plaintiffs state a claim for recovery pursuant to ERISA for Defendants' wrongful denial of benefits; in Count II, Plaintiffs allege that Defendants violated the Mental Health Parity and Addiction Equity Act of 2008 (the "MHPAEA"). (*Id.* at 6–11). Defendants now move to dismiss Count II for both failing to state a claim and being duplicative of Count I. (Docket #35).

3. **ANALYSIS**

As an amendment to ERISA, the MHPAEA was "designed to end discrimination in the provision of coverage for mental health and substance use disorders as compared to medical and surgical conditions in employer-

sponsored group health plans and health insurance coverage offered in connection with group health plans." *Smith v. Golden Rule Ins. Co.*, No. 120CV02066JMSTAB, 2021 WL 930224, at *7 (S.D. Ind. Mar. 11, 2021) (quoting *Coal. for Parity, Inc. v. Sebelius*, 709 F. Supp. 2d 10, 13 (D.D.C. 2010)).

As relevant to the present case, the MHPAEA provides the following:

> [i]n the case of a group health plan (or health insurance coverage offered in connection with such a plan) that provides both medical and surgical benefits and mental health or substance use disorder benefits, such plan or coverage shall ensure that—
>
> . . .
>
> > (ii) the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage) and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits.

29 U.S.C. § 1185a(a)(3)(A)(ii).

The MHPAEA accounts for both quantitative and non-quantitative treatment limitations. *See* 29 C.F.R. § 2590.712(a). Quantitative limitations are expressed numerically (e.g., 50 outpatient visits per year); non-quantitative limitations are those "which otherwise limit the scope or duration of benefits for treatment under a plan or coverage" (e.g., restrictions based on geographic location, facility type, and provider specialty). *Id.*; 29 C.F.R. § 2590.712(c)(4)(ii). Accordingly, any limitations with regard to mental health or substance use disorder benefits must be comparable to and must not be applied more stringently than limitations

with respect to medical and surgical benefits in the same "classification." 29 C.F.R. § 2590.712(c)(4)(i).

When it comes to pleading a case under the MHPAEA, "there is no clear law on how to state a claim for a[n] [MHPAEA] violation." *Michael W. v. United Behav. Health*, 420 F. Supp. 3d 1207, 1234 (D. Utah 2019). As a result, "district courts have continued to apply their own pleading standards." *Id.* For example, under the standard that some courts consider to be "prevailing," a plaintiff must allege

> (1) the relevant group health plan is subject to the [MHPAEA]; (2) the plan provides both medical/surgical benefits and mental health or substance use disorder benefits; (3) the plan includes a treatment limitation for mental health or substance use disorder benefits that is more restrictive than medical/surgical benefits; and (4) the mental health or substance use disorder benefit being limited is in the same classification as the medical/surgical benefit to which it is being compared.

*Id.* (quoting *Michael D. v. Anthem Health Plans of Ky., Inc.*, 369 F. Supp. 3d 1159, 1174 (D. Utah 2019), *appeal dismissed sub nom. Michael D. v. Anthem Health Plans of Ky.*, No. 19-4033, 2019 WL 4316863 (10th Cir. Apr. 29, 2019)).

Another standard requires that a plaintiff

> (1) allege a facial [MHPAEA] violation, which requires that the plaintiff "properly identify, either in the terms of the plan or the administrative record, the relevant treatment limitation supporting that charge"; (2) "allege a 'categorical' mental-health exclusion without specifying the processes and factors used by a defendant to apply that exclusion—facts that would be solely within a defendant's possession at this stage in the litigation"; or (3) "allege an impermissible mental-health exclusion 'in application'—as opposed to a facial attack relying solely on the terms of the plan at issue."

Page 5 of 16
Case 2:20-cv-01816-JPS   Filed 07/22/21   Page 5 of 16   Document 42

*Smith*, 2021 WL 930224, at *9 (quoting *A.Z. by & through E.Z. v. Regence Blueshield*, 333 F. Supp. 3d 1069, 1081–82 (W.D. Wash. 2018)).

> Yet another standard provides that
>
> to properly plead a [MHPAEA] violation resulting from the *denial of the wilderness program's* coverage, the first thing Plaintiff must do is correctly identify the relevant limitation . . . . [Plaintiff] must then allege a flaw in this limitation based on a comparison to a relevant analogue.

(*Id.*) (quoting *Welp v. Cigna Health & Life Ins. Co.*, No. 17-80237-CIV, 2017 WL 3263138, at *5 (S.D. Fla. July 20, 2017)) (emphasis added). In *Welp*, the court dismissed the plaintiffs' MHPAEA claim because they "consider[ed] wilderness programs in isolation" and failed to identify, on the face of the insurance plan, any disparate treatment limitations compared to an analogous medical or surgical care provider. *Welp*, 2017 WL 3263138, at *6.

All of these standards have provoked criticism. For example, the *Welp* standard is considerably strict, requiring a plaintiff to plead a facial challenge to the terms of a plan and not accounting for as-applied challenges. *See Michael W.*, 420 F. Supp. 3d at 1235 (criticizing the *Welp* standard). Additionally, some courts (including those in the Seventh Circuit) "have expressed similar concerns related to a . . . plaintiff's ability to obtain specific information at the pleading stage." *Smith*, 2021 WL 930224, at *10; *see also Craft v. Health Care Serv. Corp.*, No. 14 C 5853, 2016 WL 1270433, at *11 (N.D. Ill. Mar. 31, 2016) ("Especially at the pleading stage, patients are unlikely to be aware of the potential range of recognized clinically appropriate standards of care which may give rise to a difference in how mental health and medical services are treated and thus they would be left to speculate as to the clinical reasons for a particular disparity.") (internal quotations omitted).

While Defendants' motion to dismiss was briefing, the District Court for the Southern District of Indiana concluded "that in order to state a claim under the Parity Act, a plaintiff may satisfy any one of the various pleading standards discussed above." *Smith*, 2021 WL 930224, at *10; *see also Michael W.*, 420 F. Supp. 3d at 1235 ("Absent any binding Tenth Circuit precedent on the issue, the court rules that Plaintiffs may successfully plead a[n] [MHPAEA] claim under any of the various standards discussed above."). Nevertheless, the court stressed that

> [t]he ultimate question . . . is whether the plaintiff has plausibly alleged that his health insurance plan applies a separate or more restrictive treatment limitation to mental health and substance abuse services versus medical and surgical services, and the different standards merely provide a framework for considering that question as it relates to the different types of [MHPAEA] violations, including facially disparate treatment, categorical exclusions, and as-applied challenges.

*Smith*, 2021 WL 930224, at *10. In light of the shortcomings of all of the standards, the Court agrees with *Smith* and will adopt its approach in assessing whether Plaintiffs' Count II can survive a motion to dismiss for failure to state a claim.

Plaintiffs contend that the Plan violates the MHPAEA both facially and as applied. Because Defendants individually challenge Plaintiffs' facial and as-applied allegations, the Court will address the contentions separately.

### 3.1 Facial Challenge

Certainly, some of Plaintiffs' allegations boil down to mere legal conclusions.[1] In fact, Paragraph 33 of the complaint is nearly an *exact* duplicate of paragraphs in *J.L. v. Anthem Blue Cross*, No. 2:18CV671, 2019 WL 4393318, at *3 (D. Utah Sept. 13, 2019) and *Richard K. v. United Behavioral Health*, No. 18CV6318GHWBCM, 2019 WL 3083019, at *11 (S.D.N.Y. June 28, 2019), *report and recommendation adopted sub nom. Richard K. v. United Behavioral Health*, No. 1:18-CV-6318-GHW, 2019 WL 3080849 (S.D.N.Y. July 15, 2019), in which the courts held that such allegations "fail[ed] to assert any supporting facts that would plausibly suggest that defendants imposed more stringent limitations on inpatient mental health treatment than those imposed on comparable inpatient treatment for medical/surgical conditions." *Richard K.*, 2019 WL 3083019, at *12.

But Plaintiffs also plead that the Plan "imposed a . . . quantitative treatment limitation that violates [the] MHPAEA when it covered out-of-network residential treatment at the 55% rate while out-of-network skilled nursing facilities were covered at the 80% rate." (Docket #2 at 9). Defendants argue that, because the language of the MHPAEA requires that "mental

---

[1]Paragraph 32 reads, "Specifically, the Plan's medical necessity criteria for intermediate level mental health treatment benefits are more stringent or restrictive than the medical necessity criteria the Plan applies to intermediate level medical or surgical benefits." (Docket #2 at 8).

Paragraph 33 reads, "Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for M.'s treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities. For none of these types of treatment does Aurora exclude or restrict coverage of medical/surgical conditions based on medical necessity, geographic location, facility type, provider specialty, or other criteria in the manner Aurora excluded coverage of treatment for M. at Alpine." (*Id.*)

health or substance use disorder benefits [be] no more restrictive than the predominant treatment limitations applied to *substantially all* medical and surgical benefits covered by the plan," 29 U.S.C. § 1185a(a)(3)(A)(ii) (emphasis added), Plaintiffs have not alleged enough comparative medical and surgical analogs. Defendants state that "[c]omparing residential treatment to a single analog falls well short of [the 'substantially-all'] standard." (Docket #36 at 9).

Defendants do not cite a case to support this theory of pleading under the MHPAEA. To the contrary of Defendants' legal assertions, "'it is manifestly inappropriate for a district court to demand that complaints contain all legal elements (or factors) plus facts corresponding to each,' and instead '[i]t is enough to plead a plausible claim, after which a plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.'" *Smith*, 2021 WL 930224, at *11. Plaintiffs provide a concrete analog to compare the benefits given to mental health care versus medical care. Plaintiffs further allege that Defendants have not provided requested documents which would allow Plaintiffs to better evaluate Defendants' compliance with the MHPAEA.[2] (*Id.* at 9). "At this very early stage of the proceedings and absent law offered by [Defendants] to support [their] position, the Court cannot place a burden on plaintiff-patients to plead specific details" to show that the Plan treated mental health or substance use disorder benefits differently than "substantially all" medical and surgical benefits covered by the Plan. *Craft*, 2016 WL 1270433, at *11.

---

[2]"Aurora failed to produce a copy of the Plan Documents, including any medical necessity criteria for mental health and substance use disorder treatment and for skilled nursing or rehabilitation facilities in spite of Rula's request." (Docket #2 at 6).

Plaintiffs have plausibly alleged a facial challenge that the Plan applies a separate or more restrictive treatment limitation to mental health and substance abuse services than it does to medical and surgical services. *See Smith*, 2021 WL 930224, at *10.

### 3.2 As-Applied Challenge

To state an as-applied challenge under the MHPAEA, Plaintiffs "need not identify a treatment limitation expressly outlined in the Policy that applies to mental health or substance abuse treatment but not to medical or surgical treatment." *Id.* "[I]t is enough for [them] to allege that the facially neutral medical necessity requirement is applied disparately in practice." *Id.*

In their Complaint, Plaintiffs allege that Defendants do not ignore a facility's state licensures when determining whether a facility that bills itself as a skilled nursing or inpatient rehabilitation facility is actually such a facility. (Docket #2 at 3–4, 8). By contrast, Plaintiffs allege that Defendants ignored that Alpine was licensed as a residential treatment facility by the State of Utah when evaluating whether Alpine was a residential treatment facility or was, as Defendants assert, a "school program" that is not entitled to coverage under the Plan. These factual allegations are entitled to the Court's presumption of truth. By alleging that Defendants ignore state licensures when evaluating claims for mental health treatment at residential treatment facilities but do not ignore state licensures when evaluating claims for medical and surgical treatment at skilled nursing facilities and inpatient rehabilitation facilities, Plaintiffs have factually alleged a disparity between the limitations Defendants placed on Alpine and those it places on medical and surgical analogues.

Page 10 of 16
Case 2:20-cv-01816-JPS   Filed 07/22/21   Page 10 of 16   Document 42

### 3.3 Duplicative Claims

Defendants alternatively move to Dismiss Count II (brought under § 1132(a)(3)) for being duplicative of Count I (brought under § 1132(a)(1)(B)). Section 1132(a)(1)(B) permits plan beneficiaries to sue "to recover benefits due to [them] under the terms of [their] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Section 1132(a)(3), on the other hand, has been characterized as a "catchall" remedial section which allows beneficiaries to "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." *Id.* § 1132(a)(3); *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).

The Seventh Circuit has recognized that "a majority of the circuits are of the view that if relief is available to a plan participant under subsection (a)(1)(B), then that relief is *un* available under subsection (a)(3)." *Mondry v. Am. Fam. Mut. Ins. Co.*, 557 F.3d 781, 805 (7th Cir. 2009) (discussing *Varity Corp.*, 516 U.S. 489). Thus, "[a]lthough the Seventh Circuit has yet to unequivocally join its sister circuits in their interpretation of the relationship between Sections 1132(a)(1)(B) and (a)(3), it has provided an indication of its likely interpretation." *Schultz v. Prudential Ins. Co. of Am.*, 678 F. Supp. 2d 771, 778 (N.D. Ill. 2010); *see Varity Corp.*, 516 U.S. at 512 ("Although we have not had occasion to consider that question, [we have been] . . . given . . . no reason to depart from the holdings of those circuits."). In this Circuit, some district courts have maintained that "where [§ 1132 (a)(1)(B)] provides adequate relief, identical relief is not available under [§ 1132 (a)(3)]." *Nemitz v. Metro. Life Ins. Co.*, No. 12 C 8039, 2013 WL

Page 11 of 16
Case 2:20-cv-01816-JPS   Filed 07/22/21   Page 11 of 16   Document 42

3944292, at *4 (N.D. Ill. July 31, 2013). A plaintiff may not make "a thinly veiled effort to repackage a denial of benefits claim" as a claim for equitable relief. *Schultz*, 678 F. Supp. 2d at 780.

In 2011, the Supreme Court's decision in *CIGNA Corporation v. Amara* allowed for the imposition of equitable relief under § 1132(a)(3) (even that which appears monetary) if § 1132(a)(1)(B) does not permit such relief. 563 U.S. 421, at 435–42 (2011). Since this decision, "[v]arious circuit courts have opined . . . that *pleading* claims under both sections simultaneously is permissible, again with the caveat that a plaintiff cannot use the guise of equitable relief to obtain duplicative remedies for a single injury."[3] *George v. CNH Health & Welfare Benefit Plan*, No. 16-CV-1678-JPS, 2017 WL 2241513, at *3 (E.D. Wis. May 22, 2017) (emphasis added); *see, e.g.*, *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 961 (9th Cir. 2016), *as amended on denial of reh'g and reh'g en banc* (Aug. 18, 2016) ("Applying *Amara's* conclusion that a plaintiff may seek relief under both § 1132(a)(1)(B) and § 1132(a)(3) does not contravene the ruling in *Varity* . . . . *Varity* did not explicitly prohibit a plaintiff from *pursuing* simultaneous claims under § 1132(a)(1)(B) and

---

[3]As discussed in the ERISA Practice and Litigation guide,

[g]oing back at least as far as the Supreme Court's decision in *Varity*, courts have wrestled with the question of whether a plaintiff could simultaneously plead claims under both § 502(a)(1)(B) and § 502(a)(3). In the immediate post-*Varity* period, as a generalization, it can be said that many courts were persuaded that both provisions could not be set forth in a complaint as alternative grounds for relief. However, more recently, particularly in the wake of the *Amara* decision, many courts have taken a more nuanced view of the issue and have been willing to permit plaintiffs to include both alternative grounds for their action in the complaint stage of proceedings.

Lee T. Polk, *Judicially Fashioned Remedies—Equitable relief; injunctive and declaratory relief*, in 1 ERISA Practice and Litigation § 5.10 (2020).

§ 1132(a)(3).") (emphasis added). The Eighth Circuit has written that "*Varity* does not limit the number of ways a party can initially seek relief at the motion to dismiss stage." *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 726 (8th Cir. 2014). District courts in this circuit have agreed, noting, importantly, that "*Varity Corp.* did not deal with pleading but rather with relief." *Black v. Long Term Disability Ins.*, 373 F. Supp. 2d 897, 902 (E.D. Wis. 2005); *see, e.g.*, *George*, 2017 WL 2241513, at *4; *Day v. Humana Ins. Co.*, 335 F.R.D. 181, 195 (N.D. Ill. 2020) (collecting cases).

"Plaintiffs are entitled to plead alternative theories of recovery at this early stage of the lawsuit." *George*, 2017 WL 2241513, at *4. "If more than one theory is ultimately successful . . . the Court must then carefully consider whether the available remedies are inappropriately duplicative." *Id.* (citing *N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Group*, 798 F.3d 125, 134 (2d Cir. 2015)). Still, some district courts maintain that even though "both claims may well survive the motion to dismiss stage in appropriate cases . . . . where . . . it is plain from the plaintiff's complaint that his claims . . . are a mere repackaging of each other, the claim under Section (a)(3) is appropriately dismissed." *Craft*, 2016 WL 1270433, at *6.

As equitable remedies for the alleged violations of the MHPAEA under § 1132(a)(3), Plaintiffs request the following:

a) A declaration that the actions of the Defendants violate[d] MHPAEA;

b) An injunction ordering the Defendants to cease violating MHPAEA and requiring compliance with the statute

c) An order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by the Defendants to interpret and apply the terms of the Plan to ensure compliance with MHPAEA;

d) An order requiring disgorgement of funds obtained by or retained by the Defendants as a result of their violations of MHPAEA;

e) An order requiring an accounting by the Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan and other Aurora insured and administered plans as a result of the Defendants' violations of MHPAEA;

f) An order based on the equitable remedy of surcharge requiring the Defendants to provide payment to the Plaintiffs as make-whole relief for their loss;

g) An order equitably estopping the Defendants from denying the Plaintiffs' claims in violation of MHPAEA; and

h) An order providing restitution from the Defendants to the Plaintiffs for their loss arising out of the Defendants' violation of MHPAEA.

(Docket #2 at 9–10). According to Defendants, the sole basis for both Counts in the complaint is the denial of benefits, the remedy for which may be provided to Plaintiffs under § 1132(a)(1)(B) via Count I; thus, Defendants argue, Count II should be dismissed for being duplicative.

As an initial matter, Plaintiffs have waived their arguments as to why the remedies of disgorgement, accounting, restitution, and equitable estoppel should be maintained. (*See* Docket #39 at 16) (Plaintiffs noting that "some of Defendants' distinctions have merit under Seventh Circuit case law"). Defendants' arguments on these issues are, therefore, unopposed, and the Court will consider these requests for relief to be disposed.

As to the remaining requests for the relief, at this juncture the Court is less certain than Defendants that these requests are duplicative. "At the motion to dismiss stage . . . it is difficult for a court to discern the intricacies of the plaintiff's claims to determine if the claims are indeed duplicative,

Page 14 of 16
Case 2:20-cv-01816-JPS    Filed 07/22/21    Page 14 of 16    Document 42

rather than alternative, and determine if one or both could provide adequate relief." *Silva*, 762 F.3d at 727. Defendants' citations to the contrary are either to district court opinions (most of which predate *Amara* (*see* Docket #36 at 10)), which this Court finds insufficient, or they are distinguishable. For example, Defendants cite *Mondry* which was decided prior to *Amara* and makes no mention of pleading requirements. *Mondry*, 557 F.3d at 803–06; *see Day*, 335 F.R.D. at 195 ("While the Seventh Circuit had previously held that relief under subsection (a)(3) is not available for a plan participant so long as relief is available under subsection (a)(1)(B), *see* [*Mondry*], it has not definitively addressed this pleading issue post-*Amara*."). Further, as the pleading requirements relate specifically to harms alleged under the MHPAEA, the law is even less explored.

As the equivocal law in this circuit presently stands, "it is not clear that dismissal is warranted [at the pleading stage] even if the two claims [brought under § 1132(a)(1)(B) and § 1132(a)(3)] are identical." *Day*, 335 F.R.D. at 195. For now, the Court will allow Plaintiffs to plead simultaneous claims. If and when it comes time to award relief, the Court will follow the law as articulated in those cases dealing the rule against double recovery and ensure that Plaintiffs' requests for relief in law (pursuant to § 1132(a)(1)(B)) and those in equity (pursuant to § 1132(a)(3)) are not duplicative.

4.   **CONCLUSION**

For the reasons outlined above, the Court will deny, in part, and grant, in part, Defendants' partial motion to dismiss, (Docket #35). Plaintiffs have sufficiently pleaded a claim for relief, both facially and as applied, and, at the pleading stage, the Court will allow Plaintiffs to bring claims under both § 1132(a)(1)(B) and § 1132(a)(3). However, the Court will dismiss the

Page 15 of 16
Case 2:20-cv-01816-JPS   Filed 07/22/21   Page 15 of 16   Document 42

claims for relief which Plaintiffs concede may be dismissed (i.e., claims (d), (e), (g), and (h) of paragraph 40 of the complaint), (*see* Docket #2 at 9–10), with prejudice.

Accordingly,

**IT IS ORDERED** that Defendants Aurora Health Care and Aurora Health Care Inc. Health and Welfare Plan's partial motion to dismiss (Docket #35) be and the same is hereby **DENIED, in part, and GRANTED, in part**; and

**IT IS FURTHER ORDERED** that Plaintiffs' claims for relief (d), (e), (g), and (h) of paragraph 40 of the complaint (Docket #2) be and the same are hereby dismissed from the complaint with prejudice.

Dated at Milwaukee, Wisconsin, this 22nd day of July, 2021.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge